UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MYRIAM DURAND, MARTINE THEOGENE,
NERLY GUERRIER, and KERNES PIERRE,
*individually and on behalf of
others similarly situated*,

               Plaintiffs,        **MEMORANDUM & ORDER**
                                19-CV-2810 (KAM)(SJB)

    -against-

EXCELSIOR CARE GROUP LLC D/B/A
COLD SPRING HILLS CENTER FOR
NURSING AND REHABILITATION, and
YOSSI EMANUEL,

               Defendants.
----------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

       Plaintiffs Myriam Durand, Martine Theogene, Kernes
Pierre, and Nerly Guerrier (collectively, "plaintiffs"),
individually and on behalf of others similarly situated, bring
this action against Excelsior Care Group LLC d/b/a Cold Spring
Hills Center for Nursing and Rehabilitation ("Cold Spring") and
Yossi Emmanuel (collectively, "defendants"), alleging violations
of plaintiffs' employment rights under the Fair Labor Standards
Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Laws,
N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.*, Title VII of the
Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et
seq.,* the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and the New
York Equal Pay Act, N.Y. Labor Law § 194. (*See* ECF No. 25,
Second Amended Complaint ("SAC"), at 12-21.)

Presently before the court is defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) counts seven, eight, and nine of plaintiffs' SAC.  (*See* ECF No. 29, Notice of Motion to Dismiss; ECF No. 31, Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Def. Mem.") at 31.)  For the reasons set forth below, defendants' partial motion to dismiss is GRANTED, and plaintiffs' seventh, eighth, and ninth causes of action in the SAC are DISMISSED without prejudice.

BACKGROUND

The following facts -- drawn from the SAC and documents that are incorporated by reference in, or integral to, the SAC -- are assumed to be true for purposes of this motion.  *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## I.  The Second Amended Complaint

### A. The Parties

Plaintiffs represent a putative class of individuals and those similarly situated persons, who work or have worked as registered nurse supervisors for defendants.  (SAC ¶ 23.) Plaintiffs Durand, Theogene, and Guerrier are current employees of defendants, who are employed as registered nurse supervisors and are residents of New York.  (*Id.* ¶¶ 11-13, 44-46.) Plaintiff Pierre is a former employee of defendants, who was

employed as a registered nurse supervisor from August 2018 to September 2019. (*Id.* ¶¶ 18, 47.) Defendants own, operate, or control a nursing and rehabilitation center located at 378 Syosset-Woodbury Road, Woodbury, New York 11797, doing business under the name Cold Spring Hills Center for Nursing and Rehabilitation. (*Id.* ¶ 20-21.) Excelsior Care Group Cold Spring Hills (d/b/a Cold Spring Hills Center for Nursing and Rehabilitation) is a domestic corporation organized and existing under the laws of the State of New York with its principal place of business in New York. (*Id.* ¶ 21.) Defendant Emanual is an administrator, officer, owner and or agent of Cold Spring. (*Id.* ¶ 22.)

### B. Wage and Overtime Violations

Plaintiffs allege that defendants are liable under the FLSA for, *inter alia*, failing to pay proper premium overtime compensation for all hours worked in excess of 40 hours per week. (SAC ¶¶ 24, 27.) Plaintiffs bring their New York Labor Law claims under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of person consisting of: all persons who work or have worked as registered nurses for defendants between 2013 and the date of the final judgment in this matter. (*Id.* ¶ 28.)

## C. Employment Discrimination

Plaintiffs also allege several causes of action related to defendants' purported discriminatory employment practices.  (*Id.* ¶ 1.)  Specifically, plaintiffs allege that defendants "maintained a policy and practice of knowingly and willfully compensating black Registered Nurses[], Nurse managers and Directors of Nursing less than their Caucasian colleagues." (*Id.* ¶ 2.)  Plaintiffs are identified as current and former "Registered Nurse Supervisor[s]." (*Id.* ¶¶ 44-47.) Moreover, plaintiffs allege that black "Registered Nurses[], Nurse managers and Directors of Nursing" were paid "less than their American English-speaking colleagues." (*Id.* ¶ 3.)  In other words, defendants allegedly engaged in national origin and race discrimination in violation of Title VII by: (i) paying American English-speaking employees more than their Haitian colleagues, and (ii) paying their Caucasian employees more than non-Caucasian employees. (*See id.* ¶¶ 126-39.)  Moreover, plaintiffs also allege that defendants violated the Equal Pay Act by paying plaintiff Pierre, a male, less than his female co-workers even though Pierre and his co-workers performed jobs requiring "equal skill, effort and responsibility" and "under similar working conditions." (*Id.* ¶ 123.)

## II.  Defendants' Partial Motion to Dismiss

On May 13, 2019, plaintiffs commenced the instant action to recover monetary damages for defendants' purported violations of several labor laws including the FLSA.  (*See* ECF No. 1, Complaint.)  Several months later, on December 2, 2019, plaintiffs amended the initial complaint and asserted new claims under the Equal Pay Act, Title VII, and the Age Discrimination in Employment Act.  (*See* ECF No. 21, First Amended Complaint.)  Plaintiffs filed the operative SAC on February 11, 2020.  (ECF No. 25.)

Presently before the court is defendants' partial motion to dismiss specific claims in the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (*See* ECF No. 29.)  Specifically, defendants move to dismiss plaintiffs' seventh, eighth, and ninth causes of action for failing to state a claim upon which relief may be granted.  (Def. Mem. at 1-2.)  Plaintiffs' seventh cause of action alleges that defendants violated the Equal Pay Act when they paid Plaintiff Pierre, a male, less than his female co-workers even though Pierre and his co-workers performed jobs requiring "equal skill, effort and responsibility" and "under similar working conditions."  (SAC ¶¶ 120-25.)  Plaintiffs' eighth and ninth causes of action assert that defendants violated Title VII by allegedly engaging in national origin and race discrimination by

(i) paying American English-speaking employees more than their Haitian colleagues, and (ii) paying Caucasian employees more than non-Caucasian employees.  (*Id.* ¶¶ 126-39.)

**LEGAL STANDARD**

In evaluating defendants' motion to dismiss, the Court must accept all facts set forth in the SAC as true and draw all reasonable inferences in plaintiffs' favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A claim survives a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.  Significantly, where, as here, a plaintiff brings an employment discrimination claim, "[t]he facts required by *Iqbal* to be alleged in the complaint need not

give plausible support to the ultimate question of whether the
adverse employment action was attributable to discrimination.
They need only give plausible support to a minimal inference of
discriminatory motivation." *Littlejohn v. City of New York*, 795
F.3d 297, 311 (2d Cir. 2015); *accord Vega v. Hempstead Union
Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

District courts "must consider the complaint in its
entirety, as well as other sources courts ordinarily examine
when ruling on Rule 12(b)(6) motions to dismiss, in particular,
documents incorporated into the complaint by reference, and
matters of which a court may take judicial notice." *Tellabs,
Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
The court may also consider documents the plaintiff relied on in
bringing suit, and which are either in the plaintiff's
possession, or that the plaintiff knew of when bringing suit.
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002);
*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.
1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–
48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt
v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010).

## DISCUSSION

Plaintiffs seek relief for defendants' alleged wage
discrimination in violation of the Equal Pay Act and Title VII,
amongst several other state and federal labor laws.  Defendants

move to dismiss plaintiffs' discrimination claims based on disparate pay and unlawful national origin and race wage discrimination.  (*See* Def.'s Mem. at 1-2.)  Defendants do not move to dismiss plaintiffs' FLSA wage and employment claims regarding their overtime compensation.  (*Id.*)  The court will begin its analysis with plaintiffs' disparate pay claims under the Equal Pay Act before turning to plaintiffs' remaining claims of national origin and race discrimination under Title VII.  Finally, the court will briefly address defendants' motion to dismiss several claims against defendant Emanuel in his individual capacity and plaintiffs' request to amend the SAC.

## I. Plaintiffs' Seventh Claim for Disparate Pay in Violation of the Equal Pay Act

Plaintiffs' seventh cause of action asserts a claim for disparate pay due to gender discrimination under the Equal Pay Act.  In relevant part, plaintiffs allege that:

> Defendants failed to pay Plaintiff Pierre, and all similarly situated employees, equally with their female registered nurse supervisors whose job performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions, in violation of § 1620.13 of the Equal Pay Act.

(SAC ¶ 123.)  Plaintiffs allege that plaintiff Pierre was employed as a registered nurse or nurse supervisor from August 26, 2018 to September 2019, and that both plaintiff Pierre and his female comparators, nurses Christine Wolf and Nancy

Fitzgerald, performed the same job requiring equal skill,
effort, and responsibility.  (*Id.* ¶¶ 70, 89.)  Finally,
plaintiffs assert that defendants' failure to pay plaintiff
Pierre was willful and resulted in plaintiff Pierre suffering
damages.[1]  (*Id.* ¶¶ 124-25.)

The Equal Pay Act "prohibits employers from
discriminating among employees on the basis of sex by paying
higher wages to employees of the opposite sex for 'equal work on
jobs the performance of which requires equal skill, effort, and
responsibility, and which are performed under similar working
conditions.'"  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.
1999) (quoting 29 U.S.C. § 206(d)(1)).  To establish a violation
of the Equal Pay Act, a plaintiff must show (1) that the
employer paid different wages to employees of the opposite sex,
(2) that the different wages were for work performed under
similar conditions, and (3) that the work required the same
level of skill, effort, and responsibility.  *Frasier v. Gen.*
*Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991) (citing *Corning*
*Glass Works v. Brennan,* 417 U.S. 188 (1974)).  "New York's Equal
Pay Act is analyzed under the same standards applicable to the

---

[1]     The court notes that plaintiffs also allege that defendant Emanuel
retaliated against plaintiff Pierre by "removing crucial job functions and
placing [Pierre] on a permanent placement in a known problem area for months"
after plaintiff Pierre brought up the wage disparity.  (SAC ¶ 72.)  Because
plaintiffs failed to plead a claim for retaliation, however, this specific
allegation is immaterial to plaintiffs' seventh cause of action for violation
of the Equal Pay Act.

federal Equal Pay Act." *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 n.6 (W.D.N.Y. 2014). A "plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'" *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Broad generalizations drawn from job titles, and conclusory assertions of sex discrimination, do not suffice. *Id.*

After reviewing the SAC, the court concludes that plaintiffs failed to state an Equal Pay Act claim because the SAC does not provide any factual allegations giving rise to an "reasonable inference" that the employees "job content was substantially equal." *Port Auth. of New York & New Jersey*, 768 F.3d at 256; *see Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019) (summary order) (affirming dismissal of plaintiff's Equal Pay Act claim where plaintiff failed to allege that "her position was 'substantially equal'" to the defendant's position); *Rose v. Goldman. Sachs & Co.,* 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001) (finding that "nothing more than bald assertions that [a plaintiff] and male employees . . . received disparate wages for substantially equal jobs under similar working conditions . . . are too conclusory to state a claim under the Equal Pay Act"). Notably, the SAC fails to include

any facts describing the job duties, responsibilities, the skill and effort required to execute the nursing positions, or the conditions under which the work was performed.  Instead, plaintiffs' allegations are a formulaic recitation of the language of the Equal Pay Act.  *See* 29 U.S.C. § 206(d)(1) (stating that employers must "pay[ ] wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility"). Although the pleading standards are minimal at the motion to dismiss stage, courts in this Circuit have dismissed complaints where, as here, plaintiffs merely recite the Equal Pay Act language without setting forth any factual allegations.  *See, e.g.*, *Abreu Suzuki v. State Univ. of New York Coll. at Old Westbury*, No. 08-cv-4569 (TCP), 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing Equal Pay Act claims where complaint contained only single conclusory allegation that defendant paid plaintiff "and other female professors less wages than they paid to male employees although she performed equal, or superior, work and had equal or better qualifications and experience"); *Eng v. City of New York*, No. 15-cv-1282 (DAB), 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) (dismissing Equal Pay Act claim where plaintiff "provide[d] no factual allegations that would allow the Court to compare her job duties, skills and experience with those of the comparators"); *Von Maack v. Wyckoff Heights*

*Med. Ctr.*, No. 15-cv-3951 (ER), 2016 WL 3509338, at *11 (S.D.N.Y. June 21, 2016) (dismissing Equal Pay Act claim where complaint was "devoid of any allegations going to whether [plaintiff and her comparator] performed a 'substantially similar' job").

Plaintiffs contend that the mere identification of the plaintiffs' and comparators' titles -- here, the title of registered nurse supervisors -- is sufficient to state an Equal Pay Act claim. (*See* ECF No. 33, Plaintiffs' Memorandum in Opposition ("Pl. Mem.") at 5.) In other words, plaintiffs argue that they have satisfied the minimal pleading standards for an Equal Pay Act claim by simply noting that both plaintiff Pierre and his female comparators possessed the title of registered nurse supervisors. (Pl. Mem. at 5.) The Second Circuit and district courts in this Circuit disagree. Reliance on "broad generalizations drawn from job titles, classifications, or divisions," are routinely rejected when reviewing Equal Pay Act claims on a motion to dismiss. *See Stern v. State Univ. of New York*, No. 16-cv-5588 (NGG)(LB), 2018 WL 4863588, at *9 (E.D.N.Y. Sept. 30, 2018) (noting that on a motion to dismiss, a plaintiff may not "rest on broad generalizations drawn from job titles, classifications, or divisions" (quoting *Port Auth. of New York & New Jersey*, 768 F.3d at 257)); *Eng*, 2017 WL 1287569, at *3 ("[U]nder the EPA, a viable claim 'depends on the comparison of

actual job content; broad generalizations drawn from job titles, classifications, or divisions . . . cannot suffice.'"). Accordingly, for these reasons, the court grants defendants' motion to dismiss plaintiffs' seventh cause of action under the Equal Pay Act.

## II. Plaintiffs' Eighth and Ninth Claims for National Origin and Race Discrimination in Violation of Title VII

Plaintiffs' eighth and ninth causes of action assert that defendants violated Title VII by allegedly engaging in national origin and race discrimination by: (i) paying American English-speaking employees more than their Haitian colleagues, and (ii) paying Caucasian employees more than non-Caucasian employees. (SAC ¶¶ 126-39.)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a *prima facie* claim for race or national origin discrimination under either Title VII, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving

rise to the inference of discrimination." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015) (quoting *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, No. 13-cv-3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015)). At the pleading stage, however, a plaintiff need not establish a *prima facie* case of discrimination in his complaint; instead, he must plausibly allege only that "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87.

"[T]o avoid dismissal, a plaintiff must allege facts supporting 'a facially plausible inference that the [d]efendants' actions were motivated by [discriminatory] animus.'" *Jones v. City of New York*, 14-cv-0826 (CBA) (RLM), 2015 WL 502227, at*4 (E.D.N.Y. 2015) (quoting *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), *aff'd,* 552 F. App'x 98 (2d Cir. 2014) (summary order)); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.*, No. 13-cv-2345 (SJF) (GRB), 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "the complaint fails to plead any facts linking defendant's [actions] to [plaintiff's] race [or] national origin"). "Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the

[p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (summary order) ("[B]ald assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which we could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss."); *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (naked assertions of racial motivation will not suffice).

The court concludes that plaintiffs' Title VII claims against defendants for purported national origin and race discrimination must be dismissed because plaintiffs failed to allege that national origin or race were motivating factors behind the alleged wage discrimination.  Here, plaintiffs allege that defendants "engaged in egregious acts of national origin discrimination targeted at employees of Haitian ethnicity by prohibiting them from communicating in their native tongue, Haitian creole or French."  (SAC ¶ 84.)  In support of this claim, plaintiffs identify a statement made by defendant Emanual prohibiting Creole to be spoken at Cold Spring and a flyer prohibiting the use of Creole or French at defendants'

facilities.  (*Id.* at 85-86.)  Plaintiffs then identify two
"American English-speaking" nurses who were purportedly paid
more than plaintiffs.  (*Id.* at 88-89.)  As to the race-based
discrimination claims, plaintiffs allege that defendants
"willfully and intentionally pay Caucasian employees
substantially more, than they pay non-Caucasian employees who
perform the same job under similar circumstances, regardless of
experience or qualifications." (*Id.* ¶ 93.)  For the reasons
explained below, plaintiffs' conclusory allegations are
insufficient to support an inference of national origin or race
discrimination under Title VII.

First, plaintiffs' national origin discrimination
claim cannot withstand defendants' motion to dismiss because
plaintiffs failed to: (1) identify their national origin, and
(2) plead facts giving rise to an inference that plaintiffs'
national origin was a motivating factor in defendants' alleged
wage discrimination.  As an initial matter, although plaintiffs
allege that defendants discriminated against Haitian nurses (*see*
SAC ¶¶ 53, 84, 87), plaintiffs failed to allege that they are of
Haitian national origin, and thus part of a protected class.
(*See id.* ¶¶ 44-74 (describing the individual plaintiffs but
failing to identify any plaintiff as Haitian).)  It is well-
settled that "[w]here a plaintiff fails to allege that he is a
member of a protected class, he fails to allege a Title VII

16

claim." *Powell v. Lab Corp.*, No. 17-cv-3632(JMA)(GRB), 2018 WL 6814371, at *8 (E.D.N.Y. Dec. 27, 2018), *aff'd*, 789 F. App'x 237 (2d Cir. 2019); *Connell v. City of New York*, No. 00-cv-6306, 2002 WL 22033, at *3 (S.D.N.Y. Jan. 8, 2002) (dismissing Title VII claim where plaintiff failed to allege that he was member of a protected class).  Accordingly, plaintiffs' national origin claim is insufficient for this reason.

Even assuming plaintiffs adequately pled that they were of Haitian national origin, however, plaintiffs' national origin claim also fails because the SAC does not contain factual allegations giving rise to an inference that national origin was a motivating factor in the alleged wage discrimination.  *See Smith v. Mercy Med. Ctr.*, No. 16-cv-1814 (SJF)(ARL), 2017 WL 3017194, at *5 (E.D.N.Y. June 6, 2017) (dismissing race and national origin discrimination claims where plaintiff failed to allege facts that support her allegation that "race or national origin were motivating factors behind her termination").  As discussed above, plaintiffs base their national origin discrimination claims primarily on defendants' alleged statements prohibiting plaintiffs from speaking Creole or French at work.  (*See* SAC ¶ 84-86.)  As the Second Circuit has explained, however, Title VII does not expressly identify language as a protected class.  *See Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (stating that "[l]anguage, by

itself, does not identify members of a suspect class"); *Brewster v. City of Poughkeepsie,* 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006)(noting that Title VII "does not protect against discrimination on the basis of language").  Although the court recognizes that under certain circumstances "evidence of language discrimination may permit a jury finding of national origin or race discrimination -- for example, when it is accompanied by sufficient evidence more directly proving the latter forms of discrimination," *Panjwani v. Jet Way Sec. & Investigations, LLC*, No. 13-cv-7186 (SLT)(VMS), 2016 WL 3675331, at *13 (E.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, No. 13-cv-7186 (SLT)(VMS), 2016 WL 3702969 (E.D.N.Y. July 7, 2016), plaintiffs' SAC provides no additional factual allegations relating to the claim of national origin discrimination, notwithstanding defendants' language preferences.[2]  Indeed, the SAC confirms that plaintiffs' national

---

[2]    In assessing the "propriety of a language-restriction policy," courts consider "whether the employer's practices reflect an intent to discriminate on the basis of the classifications protected by Title VII, including race and national origin. . . [and] whether there is evidence that the employer, in addition to adopting an English-only policy, has exhibited other forms of racial or ethnic hostility."  *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009) (collecting cases); *see, e.g., Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1489 (9th Cir. 1993) (noting that English-only policies in conjunction with other discriminatory conduct can "contribute[ ] to an overall environment of discrimination"); *Brewster*, 447 F. Supp. 2d at 351 (holding that there was sufficient evidence of discrimination where employer made comments, such as, "Speak English. Go back to your own country if you want to speak Spanish. You're in our country."); *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 262-63 (S.D.N.Y. 2000) (noting that a "no-Spanish" policy "could be used to disguise a discriminatory motive").  For instance, if plaintiffs "were able to present evidence that other employees were permitted to speak in, for example, Chinese or

origin claim is based on defendants alleged "disdain for Plaintiffs['] *linguistic characteristics*, in violation of Title VII." (SAC ¶ 131 (emphasis added).) For the reasons explained above, however, Title VII does not prohibit discrimination based on language-preferences alone and, thus, plaintiffs' national origin claim fails on this basis. Accordingly, because the SAC does not contain factual allegations supporting plaintiffs' assertion that national origin was a motivating factor behind the alleged wage discrimination, the court dismisses plaintiffs' eighth cause of action for national origin discrimination under Title VII.

Second, plaintiffs' claim for race discrimination is similarly deficient because the SAC fails to allege facts that support an inference that plaintiffs' race was a motivating factor behind the alleged wage discrimination. Plaintiffs assert that "Defendants' failure to pay Plaintiffs and all similarly situated employees, equally with their Caucasian coworkers was based on the Defendants disdain for Plaintiffs' skin color." (SAC ¶ 138.) For a Title VII discrimination claim to survive a motion to dismiss, plaintiff must plausibly allege facts that indicate her race "was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. Where a plaintiff

---

Portugese, but not Spanish, such evidence could support an inference of intentional discrimination on the basis of national origin." *Velasquez*, 88 F. Supp. 2d at 263.

fails to provide facts supporting an inference that his or her race was a "motivating factor" in the employment decision (here, the alleged wage discrimination), courts in this Circuit have dismissed the Title VII claims. *See, e.g.*, *Haynes v. Capital One Bank*, No. 14-cv-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing race discrimination claim where, "aside from one ambiguous remark made by her branch manager," the plaintiff "fail[ed] to allege any facts that suggest[ed] her termination or any other adverse employment actions were connected to her race"); *Soloviev*, 104 F. Supp. 3d at 249 (dismissing race discrimination claim where plaintiff "show[ed] no connection between his termination and his" race). Here, plaintiffs' conclusory allegation that defendants failed to pay plaintiffs and "all similarly situated employees, equally with their Caucasian coworkers [] based on the Defendants['] disdain for Plaintiffs['] skin color" is insufficient to state a Title VII claim for race discrimination. *See De La Pena v. Metro. Life Ins. Co.*, 552 F. App'x 98, 100 (2d Cir. 2014) (summary order) (affirming dismissal of employment discrimination claims where "plaintiff's bald assertions of discrimination -- unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of plaintiff's protected class being treated differently -- were implausible and insufficient to survive a motion to dismiss"); *Samuel v.*

*Bellevue Hospital Center*, 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"). Contrary to plaintiffs' assertion, it is not sufficient to simply allege that the named plaintiffs are "black" and of "Haitian national origin."[3] (Pl. Mem. at 7-8.) Accordingly, for the reasons stated above, plaintiffs' failure to allege facts that render plausible an inference that plaintiffs' race was motivating factor in the alleged wage discrimination is fatal to plaintiffs' claim. Thus, the court also dismisses plaintiffs' ninth cause of action for race discrimination under Title VII.[4]

Finally, defendants argue that plaintiffs failed to exhaust their administrative remedies by failing to obtain the

---

[3]  The court notes that the SAC does not contain any allegation that plaintiffs are of "Haitian national[]" origin and declines to read facts into the SAC. *See Ann Wang v. Gov't Employees Ins. Co.*, No. 15-cv-1773 (JS)(ARL), 2016 WL 11469653, at *2 (E.D.N.Y. Mar. 31, 2016) ("Plaintiff impermissibly makes several new allegations in her brief, so the Court will not consider them.").

[4]  The court also dismisses with prejudice plaintiffs' eighth and ninth causes of action against defendant Emanuel in his individual capacity. (*See* Pl. Mem. at 12 (stipulating to dismissal of Title VII causes of action against individual defendant Emanuel).) It is well-settled in this Circuit that generally, "'individuals are not subject to liability under Title VII.'" *Patterson v. Cty. of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)); *see also Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 196 n.2 (2d Cir. 2005) (noting that "Title VII, while imposing liability on employers, does not impose liability on the supervisory personnel of employers").

requisite right-to-sue letter from the U.S. Equal Employment
Opportunity Commission ("EEOC") before filing the instant
federal suit.  (Def. Mem. at 12-13.)  The court concludes that
for the purpose of deciding defendants' partial motion to
dismiss, plaintiffs' procedural defect is cured because
plaintiffs attached the right-to-sue letter in opposition to
defendants' motion.  (*See* ECF No. 35 Blackburn Declaration, Ex.
1 (Notice of Right to Sue from EEOC); ECF No. 34, Defendant's
Reply Memorandum in Response to Plaintiff's Memorandum in
Opposition, at 8 n.7 (acknowledging that the court may cure
plaintiffs' procedural defect now that plaintiffs provided a
right-to-sue letter).)  Nonetheless, even if the court deemed
the procedural defect cured, the court concludes that
defendants' partial motion to dismiss plaintiffs' Equal Pay and
discrimination claims must be granted in its entirety for the
reasons set forth above.

**III.  Plaintiffs' Request for Leave to Amend the SAC**

Finally, plaintiffs request leave to amend the SAC in
the event that this court concludes that the allegations in the
SAC are insufficient to state a claim under the Equal Pay Act
and Title VII.  (Pl. Mem. at 12-13.)  District courts "ha[ve]
broad discretion in determining whether to grant leave to
amend," *Gurary v. Winehouse*, 235 F.3d 793, 801 (2d Cir. 2000),
and "leave to amend should be freely granted when 'justice so

22

requires.'" *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). But leave should be denied if repleading would be "futile." *Id.*

Here, plaintiffs have filed three separate complaints. (*See* ECF Nos. 1 (Complaint), 21 (First Amended Complaint), 25 (Second Amended Complaint).) Further, this court's January 28, 2020 Minute Entry advised the plaintiffs that their Equal Pay Act claim "may be lacking in factual allegations regarding plaintiffs, their comparators, and the respective terms and conditions of their employment." (ECF Entry 1/28/2020.) Despite the court's advisement, plaintiffs' SAC failed to remedy the pleading defects and, therefore, fails to state an Equal Pay Act claim for the reasons discussed above. In addition, plaintiffs' Title VII claims for national origin and race discrimination also fail to state a plausible claim for relief, as discussed above. Nonetheless, given the "permissive standard" permitting leave to amend under Rule 15, *Williams*, 659

F.3d at 212–13, the court concludes that plaintiffs shall be granted limited leave to amend the SAC as follows.

First, as to plaintiffs' Equal Pay Act claim, the court concludes that the factual allegations in the SAC are insufficient to state a plausible claim for relief because plaintiffs failed to set forth facts alleging that plaintiffs held the same job duties and responsibilities as the comparators and in the same conditions of employment. *See supra* Discussion Section I (citing authority describing pleading requirements for Equal Pay Act claims). Thus, plaintiffs may amend the SAC to assert an Equal Pay Act claim against defendants by providing factual allegations that would permit a "reasonable inference" that the relevant employees' "job content was substantially equal." *See Port Auth. of New York & New Jersey*, 768 F.3d at 256. Such relevant allegations may include facts describing plaintiffs' and the comparator's job duties, responsibilities, the skill and effort required to execute the supervisory nursing duties, and the conditions under which the work was performed. *See supra* Discussion Section I; *see also Port Auth. of New York & New Jersey*, 768 F.3d at 256 ("At the pleading stage, then, a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'").

Second, the SAC clearly seeks to allege that defendants violated plaintiffs' rights protected by Title VII by engaging in wage discrimination based on national origin and race. It appears to the court that such claims may be viable, if plaintiffs amend the SAC to allege that plaintiffs belong to a protected class. Further, plaintiffs Title VII claims may be viable if plaintiffs allege facts supporting an inference of discrimination, *i.e.*, a causal connection between plaintiffs' national origin and race and defendants' alleged wage discrimination.

The court therefore grants plaintiffs leave to amend the SAC, but only to a limited extent. Plaintiffs may amend the SAC to assert claims against defendants (except for defendant Emanual, for the reasons set forth above) under Title VII by asserting factual allegations giving rise to an inference that plaintiffs' national origin and race were "motivating factor[s]" in the employment decision (here, the alleged wage discrimination). *See Vega*, 801 F.3d at 86. Accordingly, plaintiffs may set forth sufficient facts supporting their assertion that: (1) defendants' alleged wage discrimination between Haitian and non-Haitian employees was motivated by plaintiffs' national origin, and (2) the same wage discrimination between Caucasian and non-Caucasian employees was also motivated by plaintiffs' race.

For the reasons stated above, plaintiffs are denied leave to amend their national origin claim based on defendants' alleged discrimination against the Creole or French language. A national origin claim premised on treatment of "linguistic characteristics" at the workplace is likely insufficient to state a claim for national origin discrimination under Title VII without further allegations supporting an inference of discrimination on the basis of national origin. *See supra* Discussion Section II (discussing authority addressing language-based preferences as relevant to Title VII claims). Thus, a national origin claim solely based on the employer's language preferences would be futile, and any further effort to replead a claim under that legal theory, without additional factual allegations supporting an inference of discrimination, would be dismissed. *See Cuoco*, 222 F.3d at 112 (concluding that a futile request to re-plead should be denied). Finally, plaintiffs are denied leave to amend the SAC to state Title VII claims against defendant Emanuel for the reasons stated above.

In granting plaintiffs leave to amend the SAC, the court also concludes that defendants are not prejudiced by such amendment because the instant motion represents defendants' first motion to dismiss. Accordingly, should plaintiffs fail to remedy the pleading defects in the SAC as identified in this

Memorandum and Order, defendants may seek leave to move again to dismiss the third amended complaint.

## CONCLUSION

For the reasons set forth above, defendants' partial motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) is granted in its entirety.  Plaintiffs' seventh, eighth, and ninth causes of action in the SAC are dismissed without prejudice. Plaintiffs' eighth and ninth causes of action against defendant Yossi Emanuel are dismissed with prejudice.  Plaintiffs may amend the SAC to allege sufficient facts to state valid claims under the Equal Pay Act and Title VII in accordance with this Memorandum and Order.  Plaintiffs are granted leave to file a third amended complaint within thirty (30) days of this Memorandum and Order.

SO ORDERED.


                                    /s/
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York


Dated: December 9, 2020
       Brooklyn, New York