UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
MYRIAM DURAND, MARTINE THEOGENE, NERLY GUERRIER, and KERNES PIERRE, individually and on behalf of others similarly situated,

                            Plaintiffs,

                        -against-

EXCELSIOR CARE GROUP LLC d/b/a COLD SPRINGS HILLS CENTER FOR NURSING AND REHABILITATION,

                        Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19-CV-2810 (KAM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Plaintiffs Myriam Durand, Martine Theogene, Nerly Guerrier, and Kernes Pierre ("Plaintiffs") initiated this action against Defendant Excelsior Care Group LLC ("Defendant") on May 13, 2019.[1] Plaintiffs allege various claims, including violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*, the New York Equal Pay Act, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In addition, three of the four Plaintiffs, Myriam Durand, Martine Theogene, and Kernes Pierre seek damages for

---

[1] Plaintiffs Myriam Durand and Martine Theogene originally filed the instant action against Excelsior Care Group and individual Defendant Yossi Emanuel. (*See* Complaint, ECF No. 1.) Plaintiffs Nerly Guerrier and Kernes Pierre joined as named plaintiffs through amended pleadings, and individual Defendant Yossi Emanuel was terminated as a party pursuant to the filing of Plaintiffs' original Third Amended Complaint on January 8, 2021. (*See* Original Third Amended Complaint, ECF No. 45.) On February 3, 2021, the Honorable Kiyo A. Matsumoto ordered the Plaintiffs to file a "new Third Amended Complaint," which the Plaintiffs did on February 10, 2021. (*See* February 3, 2021 ECF Minute Entry.) The Court notes that although Plaintiffs' operative Third Amended Complaint is styled as a collective action under the FLSA and NYLL (*see* Operative Third Amended Complaint ("Third Am. Compl."), ECF No. 50, ¶¶ 115–117), Plaintiffs' counsel have advised that "Plaintiffs ultimately did not seek certification and are not pursuing this case on a class or collective basis." (June 6, 2021 Letter Motion ("Pls.' Letter"), ECF No. 57, at 1.) Unless otherwise noted, references herein to the Third Amended Complaint are to the operative version filed on February 10, 2021.

unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL") (these three Plaintiffs are referred to herein as the "FLSA Plaintiffs").

The FLSA Plaintiffs have reached a proposed settlement with Defendant of the wage and hour claims in this matter, the terms of which are set forth in a settlement agreement filed with the Court. (*See* June 6, 2021 Proposed Settlement Agreement ("Settl. Agr."), ECF No. 57-1.) On June 6, 2021, Plaintiffs filed a letter motion requesting that the Court approve the settlement agreement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). (*See* Pls.' Letter, ECF No. 57.) The Honorable Kiyo A. Matsumoto referred the parties' motion to the undersigned Magistrate Judge for a fairness hearing and a Report and Recommendation.

On June 14, 2021, the Court held a fairness hearing on Plaintiffs' motion. (*See* June 14, 2021 ECF Minute Entry; Transcript of June 14, 2021 Proceedings ("Transcript"), ECF No. 60; referred to herein as the "Fairness Hearing.") For the reasons set forth below, the Court finds the settlement agreement to be fair and reasonable, and recommends that the parties' settlement agreement be approved under *Cheeks*.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As set forth in the Third Amended Complaint, Plaintiff Durand alleges that she was hired by Defendant as a qualified Director of Nursing in approximately June 2017 and continues to work for Defendant as a Nurse Supervisor. (Third Am. Compl., ECF No. 50, ¶¶ 57, 59–62.) Plaintiff Durand further alleges that from November 2018 through the filing of the Third Amended Complaint, she worked overtime for a total of 52.5 hours per week but was compensated by Defendant at her regular hourly pay rate. (*Id.* ¶¶ 64–65.) Durand claims that she kept track of the hours she worked using her pay

2

stubs. (*Id.* ¶ 67.) She also asserts that Defendant did not post notices regarding overtime or provide an accurate statement of wages. (*Id.* ¶¶ 68–69.)

Plaintiff Theogene alleges that she was employed by Defendant as a qualified Nurse Supervisor from 2015 until 2016, and again from January 2018 until present. (*Id.* ¶¶ 73–75.) Theogene claims that Defendant "admitted to owing [her] at least $18,000 in unpaid overtime wages" because she worked 57.5 to 70 hours per week from approximately January 2018 through the filing of the Third Amended Complaint, but Defendant only paid her at a regular rate. (*Id.* ¶¶ 76, 78, 80.) Theogene also asserts that she kept track of the hours she worked using her pay stubs (*id.* ¶ 81), and that Defendant did not post notices regarding overtime and wages in her primary languages of Creole or French or provide an accurate statement of wages. (*Id.* ¶¶ 82–83.)

Plaintiff Pierre alleges that he worked for Defendant from 2018 until September 2019 as a qualified Registered Nurse Supervisor (*Id.* ¶¶ 84–88.)[2] Plaintiff Pierre's wage and hour allegations are grounded on a claim of a lack of overtime pay for working 57.5 hours per week from August 2018 until September 2019, which Pierre kept track of using his pay stubs. (*Id.* ¶¶ 109–112.) Pierre further alleges that Defendant did not post notices regarding overtime and wages in his primary languages of Creole or French or provide an accurate statement of wages. (*Id.* ¶¶ 113–114.)

On June 6, 2021, the parties informed the Court that they reached a settlement of the FLSA Plaintiffs' wage and hour claims. (*See* Pls.' Letter, ECF No. 57.) Under the terms of the settlement agreement, Defendant agrees to pay a total of $115,000, of which

---

[2] The Court notes that Plaintiffs' Third Amended Complaint lists two start dates for Pierre's employment: July 9, 2018 and August 26, 2018. (*See* Third Am. Compl., ECF No. 50, ¶¶ 86, 84.) For the purposes of this Report and Recommendation, and in light of the factual questions surrounding whether Plaintiff Pierre was entitled to any compensation for alleged wage deficiencies related to overtime, the discrepancy is not material.

3

Plaintiff Durand is to receive $14,924.62; Plaintiff Theogene is to receive $50,222.18; Plaintiff Pierre is to receive $2,553; and Plaintiffs' counsel is to receive $47,300.20 in attorneys' fees and costs, split evenly among Plaintiffs' co-counsel Tyrone A. Blackburn, Esq. and Frasilie Stinvil, Esq. (Pls.' Letter, ECF No. 57, at 2; Settl. Agr., ECF No. 57-1, ¶ 2.1).[3] Because Plaintiffs' counsel did not include any billing documentation or retainer agreements in the June 6, 2021 submissions, the Court directed Plaintiffs' counsel to submit the supporting retainer agreement and billing records to permit judicial review of the proposed attorneys' fees following the Fairness Hearing. (*See* June 14, 2021 ECF Minute Entry.) On June 17, 2021, attorney Tyrone A. Blackburn, Esq., submitted a declaration, as well as time records and copies of the relevant retainer agreements. (*See* Decl. of Tyrone A. Blackburn ("Blackburn Decl."), ECF No. 58.) On June 22, 2021, attorney Frasilie Stinvil, Esq., submitted a declaration with the same basic time records, this time including a column indicating which of the two attorneys had performed each task, and a copy of the co-counseling agreement. (*See* Decl. of Frasilie Stinvil ("Stinvil Decl."), ECF No. 59.)

For the reasons stated below, the Court recommends approving the settlement agreement.

## DISCUSSION

I. Legal Standards

In reviewing proposed settlements under the FLSA, courts are tasked with considering "whether the agreement reflects a reasonable compromise of disputed

---

[3] Plaintiffs' counsel lists a settlement award of $50,222.17 for Plaintiff Theogene in the letter motion to the Court, but the settlement agreement itself reflects an award of $50,222.18 made through two payments of $25,111.09. (*Compare* Pls.' Letter, ECF No. 57, at 2, *with* Settl. Agr., ECF No. 57-1, ¶¶ 2.1(c)(v)–(vi).)

issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (internal quotation marks and citation omitted); *see also Cheeks*, 796 F.3d at 206. Courts in this circuit have identified several factors for determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

As the Second Circuit recently held, if a court finds that a "proposed settlement is unreasonable in whole or in part, the court . . . must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. The court cannot, however, "simply rewrite the [settlement] agreement." *Id.* Accordingly, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

II. <u>Settlement Agreement</u>

Analyzing the settlement agreement against the *Wolinsky* factors, the Court finds that the amount and terms of the settlement are fair and reasonable. As a threshold matter, the settlement amount provides each of the FLSA Plaintiffs with a recovery that

5

exceeds full compensation for their respective wage deficiency amounts. Considering (1) the terms of the agreement; (2) the protracted discovery and litigation history of this case; (3) the lengthy settlement negotiations that preceded the parties' proposed settlement agreement; and (4) the possible litigation risks, which could ultimately limit the range of Plaintiffs' possible recovery, the Court concludes, on balance, that the settlement agreement "reflects a reasonable compromise of disputed issues." *Rotthoff*, 2021 WL 1310220, at *2.

    A. <u>Settlement Amount & the *Wolinsky* Factors</u>

        1. *The Plaintiffs' Range of Possible Recovery*

Beginning with the Plaintiffs' range of possible recovery, the Court is satisfied that the proposed settlement amount will adequately compensate the FLSA Plaintiffs.

The agreement proposes a total settlement of $115,000, with $14,924.62 going to Plaintiff Durand, $50,222.18 to Plaintiff Theogene, and $2,553.00 to Plaintiff Pierre. (Pls.' Letter, ECF No. 57, at 2; Settl. Agr., ECF No. 57-1, ¶ 2.1.) During the Fairness Hearing, Plaintiffs' counsel represented that, after extensive discovery and review of employment records, the parties calculated that this agreed-upon settlement amount would result in Plaintiffs Durand and Theogene getting "every dollar that was owed to them plus the [statutory] penalties as well as the [nine percent] interest." (Transcript, ECF No. 60, 6:25–7:3; *see also* Pls.' Letter, ECF No. 57, at 4 ("[T]he parties agreed to settle Plaintiffs' FLSA claims at premiums *above* the amount of Plaintiffs' overtime claims." (emphasis in original)).) Furthermore, Plaintiffs' counsel conveyed that Plaintiff Pierre was arguably not entitled to any recovery for his overtime claims, but that the parties agreed to a small award for him in order to settle the matter. (Transcript, ECF No. 60, 7:3–5.)

6

2. *Avoiding Anticipated Burdens and Expenses & Litigation Risks*

The proposed settlement will also avoid additional expenses and costs, as well as litigation risks that the Plaintiffs would face if the case were to go to trial. In their letter motion, Plaintiffs represented "that continuing to litigate Plaintiffs' FLSA and NYLL claims will result in unnecessary expense and delay and is not likely to result in additional benefit to Plaintiffs," whereas the proposed settlement agreement "makes monetary relief available to Plaintiffs in a prompt and efficient manner." (*See* Pls.' Letter, ECF No. 57, at 4); *see also Castillo v. Cranes Express Inc.*, No. 18-CV-1271 (PKC) (LB), 2018 WL 7681356, at *2 (E.D.N.Y. Dec. 12, 2018) (approving settlement amount where "[t]he settlement provides plaintiff with certainty regarding what he will recover from defendants and avoids the time and expense of litigation").

In arriving at the $115,000 settlement amount, the parties acknowledge that there are several factual and legal disputes that, depending on how they are resolved, could impact Plaintiffs' ability to recover at all. (*See* Pls.' Letter, ECF No. 57, at 3.) Specifically, Defendant stated at the Fairness Hearing that although there was evidence of underpayment found after conducting an extensive review of the records and with the benefit of an audit by the U.S. Department of Labor, there were also questions regarding whether the FLSA Plaintiffs were exempt from overtime regulations. (*See* Pls.' Letter, ECF No. 57, at 4; Transcript, ECF No. 60, 7:3–5 ("[T]he documents did not reveal that [Plaintiff Pierre] was owed much of anything, if anything at all."); *id.* 12:13–14 ("[T]here was a real potential for exemption to apply for large portions of the employment time period here.").)[4] In addition, given the length of time the case has

---

[4] Notably, Defendant contends that, in addition to this settlement, it paid $4,518.58 in back wages to Plaintiff Durand prior to the commencement of this action. (*See* Pls.' Letter, ECF No. 57, at 4.) Additionally, during the course of discovery, Defendant produced documentation

7

been pending and the already higher than average attorneys' fees and costs, discussed below, a settlement at this time is prudent as it will help the parties to avoid additional expenses and costs.

       3. *Arm's-Length Bargaining & Possibility of Fraud or Collusion*

Finally, the record amply demonstrates that the settlement agreement was the product of arm's-length bargaining reached only after protracted discovery and extensive settlement discussions with experienced counsel. The parties also had the benefit of a U.S. Department of Labor audit, as well as multiple conferences before United States Magistrate Judge Sanket J. Bulsara. (*See* Pls.' Letter, ECF No. 57, at 5; January 6, 2020 ECF Minute Entry; March 2, 2021 ECF Minute Entry; March 4, 2021 ECF Minute Entry.) There is thus no evidence to suggest that the settlement agreement was the product of fraud or collusion.

For all of these reasons, the Court respectfully recommends that the settlement amount should be found to be fair and reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335.

    B. <u>Settlement Agreement Terms</u>

The terms of the settlement agreement further demonstrate that the proposed settlement is the product of arm's-length bargaining between the parties. The agreement does not include any problematic provisions that could run afoul of the FLSA's remedial purposes, such as impermissible confidentiality or non-disparagement clauses, nor does the settlement agreement include any clauses that limit the prospect of Plaintiffs' future employment with Defendant. *See Rotthoff*, 2021 WL 1310220, at *2; *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840 (CBA) (CLP), 2018 WL 2376481, at *7

---

of a prior settlement between Defendant and the U.S. Department of Labor indicating that Defendant paid $5,751.63 in overtime wages due to Plaintiff Theogene, although that issue remains in dispute. (*Id.*)

8

(E.D.N.Y. Apr. 26, 2018) ("Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." (citation omitted)), *report and recommendation adopted*, No. 15-CV-6840 (CBA) (CLP), 2018 WL 2376300 (E.D.N.Y. May 24, 2018).

In addition, although the agreement contains a release as to Plaintiffs' claims, the release is narrow and applies only to wage-related claims arising under the FLSA and NYLL "up to and including the date of the execution" of the agreement. (Settl. Agr., ECF No. 57-1, ¶ 4.1). This style of narrow release is appropriate in this context and should be approved. *See Seecharan v. Heritage Place LLC*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299692, at *4 (E.D.N.Y. Mar. 15, 2021), *report and recommendation adopted*, No. 20-CV-3898 (WFK) (LB), 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021); *Zavala Artiega v. Griffin Organics, Inc.*, No. 16-CV-6613 (AEK), 2021 WL 1997636, at *5 (S.D.N.Y. May 19, 2021).

III. <u>Attorneys' Fees and Costs</u>

When attorneys' fees are included as part of a settlement agreement, courts are required to "evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600 (citing *Cheeks*, 796 F.3d at 206; 29 U.S.C. § 216(b)); *see also Wolinsky*, 900 F. Supp. 2d at 336 ("[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." (alterations in original) (internal quotation marks and citation omitted)).

Courts in the Second Circuit generally "calculate a reasonable fee using either the 'lodestar' method or the 'percentage of the fund' method." *Valencia v. Nassau Country Club*, No. 18-CV-2724 (LDH) (JO), 2020 WL 7249440, at *1 (E.D.N.Y. Oct. 19, 2020) (citing

*McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)), *report and recommendation adopted*, No. 18-CV-2724 (LDH) (VMS), 2020 WL 6867911 (E.D.N.Y. Nov. 23, 2020). "Either way, the court must consider the 'traditional criteria' for fee applications," including: "the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations." *Id.* (citing, *inter alia*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In addition, "in an individual FLSA action in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." *Perez-Ramos v. St. George Holding Corp.*, No. 18-CV-1929 (KAM) (JO), 2020 WL 415818, at *3 (E.D.N.Y. Jan. 27, 2020) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

In the FLSA context, the Second Circuit recently observed that the primary goal of the FLSA's fee shifting provisions is to provide compensation for counsel sufficient to ensure that plaintiffs in "run of the mill FLSA actions" are not left without legal recourse. *Fisher*, 948 F.3d at 603–04. Finding that a district court's modification of the settlement agreement and reduction of the fee in an FLSA case was an abuse of discretion, the *Fisher* court observed that "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement," and that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." *Id.* at 603. Such an approach would be "inconsistent with the remedial goals of the FLSA," which is a "'uniquely protective statute.'" *Id.* (quoting *Cheeks*, 796 F.3d at 207). Accordingly, the court emphasized that "a fee may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Fisher*, 948 F.3d at 604 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

10

A. <u>Reasonable Hourly Rate</u>

Courts employing the "lodestar" method multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *See Rotthoff*, 2021 WL 1310220, at *3 (citations omitted). Courts in this circuit determine a reasonable hourly rate using the prevailing hourly rates in the district in which they sit. *See, e.g.*, *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021). In comparison, under the "percentage of the fund" method, many courts find that "a one-third contingency fee is generally considered reasonable in this Circuit." *Castillo*, 2018 WL 7681356, at *4; *see also Sicajan Diaz v. Pizza Napolitana, Inc.*, No. 19-CV-4911 (EK) (RML), 2020 WL 8265766, at *4 (E.D.N.Y. Dec. 4, 2020), *report and recommendation adopted*, No. 19-CV-4911 (EK) (RML), 2021 WL 260093 (E.D.N.Y. Jan. 26, 2021). However, as discussed above, there is no "proportionality limit on recoverable attorneys' fees." *Fisher*, 948 F.3d at 602–05.

Here, attorneys Blackburn and Stinvil request $47,300.20 in attorneys' fees and costs,[5] or approximately 41 percent of the total settlement amount of $115,000. Counsel

---

[5] The party requesting the fees "must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (2d Cir. 2020) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). Attorneys Blackburn and Stinvil initially filed the motion for settlement approval without any billing documentation. (*See* Pls.' Letter, ECF No. 57.) Upon the Court's request, Plaintiffs' counsel subsequently submitted "time and costs records" maintained using "Bill4Time" software, as well as relevant retainer and co-counsel agreements. (*See* Blackburn Decl., ECF No. 58, ¶ 2; Blackburn Billing Records ("Blackburn Records"), attached as Ex. A to Blackburn Decl., ECF 58-1; Blackburn Retainer Agreements ("Blackburn Retainers"), attached as Ex. B to Blackburn Decl., 58-2; Stinvil Decl., ECF No. 59, ¶ 2; Stinvil Billing Records ("Stinvil Records"), attached as Ex. 1 to Stinvil Decl., ECF No. 59-1; Stinvil Co-Counsel Agreement ("Stinvil Agr."), attached as Ex. 2 to Stinvil Decl., ECF No. 59-2.) While the billing records submitted are not ideal in terms of their detail and clarity, the Court finds that the records and agreements provide a sufficient documentary basis to analyze the fee request in the context of an agreed-upon FLSA settlement. *Cf. Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 60 (E.D.N.Y. 2010) (disapproving of counsel's "poor decision not to keep detailed records" but proceeding with the fee analysis nonetheless).

indicate that their actual costs and fees amount to $63,360, calculated by multiplying 115.2 billable hours by a $550 hourly rate. (*See* Blackburn Decl., ECF No. 58, ¶ 10; Blackburn Records ECF No. 58-1; Stinvil Decl., ECF No. 59; Stinvil Records, ECF No. 59-1.)[6] Based on the settlement amount of $47,300.20, attorneys Blackburn and Stinvil's proposed lodestar hourly rate would equal to approximately $410, calculated by dividing the fee request of $47,300.20 by the 115.2 hours claimed. As noted below, however, an independent review of the original billing records indicates that the hours listed therein total 113.3.[7]

"Recent decisions within the Eastern District of New York approved hourly rates of $300 to $450 for partners, $200 to $300 for senior associates, and $100-$200 for junior associates, and $70 to $100 for support staff." *Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (LB), 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021) (collecting cases), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*, No. 18-CV-2708 (ARR) (LB), 2021 WL 1946322 (E.D.N.Y. May 15, 2021). Mr. Blackburn has been a member of the New York Bar since September 2018 and concentrates on "employment law, medical malpractice law, and sexual harassment/assault law matters." (Blackburn Decl., ECF No. 58, ¶¶ 5–6.) Ms. Stinvil has been a member of the New York Bar since September

---

[6] The Court notes that while attorneys Blackburn and Stinvil refer to costs associated with the instant action, the records submitted to the Court do not include notice of costs. (*See* Blackburn Decl., ECF No. 58, ¶¶ 2, 4; Stinvil Decl., ECF No. 59, ¶ 2.) Additionally, while Plaintiffs' counsel initially wrote that they "devoted over 120 hours" litigating Plaintiffs' FLSA and NYLL claims resulting in $66,000 in attorneys' fees (Pls.' Letter, ECF No. 57, at 6), subsequent submissions describe "over 115.2 hours of work completed" resulting in $63,360 in attorneys' fees. (*See* Blackburn Decl., ECF No. 58, ¶ 10.)

[7] The Court's own calculation of the total hours listed in attorney Blackburn's original submission shows a total of 113.3 hours spent, which would equal to an hourly rate of approximately $417.50. (*See* Blackburn Records, ECF 58-1.) But as discussed below, the total number of hours worked appears to be greater than the 115.2 hours originally proffered by Plaintiffs' counsel.

2013 and has a "background in commercial and employment law litigation." (Stinvil Decl., ECF No. 59, ¶¶ 6–7.)

Given Mr. Blackburn and Ms. Stinvil's level of experience and expertise, and in light of relevant caselaw, the Court estimates that a reasonable hourly rate for both attorneys is $350. *See, e.g.*, *Luk v. ABNS NY Inc.*, No. 18-CV-5170 (AMD) (RLM), 2021 WL 829417, at *5 (E.D.N.Y. Feb. 9, 2021) (finding $350 to be a reasonable rate for a "firm's principal" in FLSA litigation), *report and recommendation adopted sub nom. Ying Ying Dai v. ABNS NY Inc.*, No. 18-CV-5170 (AMD) (RLM), 2021 WL 826014 (E.D.N.Y. Mar. 3, 2021). This rate falls on the low end of the range found reasonable for law partners in this district, and just above the rates found reasonable for senior associates. *See Gao*, 2021 WL 1949275, at *17, *report and recommendation adopted sub nom. Bin Gao*, 2021 WL 1946322; *see also Perez-Ramos*, 2020 WL 415818, at *3–4 (finding an hourly rate of $450 for a senior partner and $200 for a senior associate to be reasonable). This hourly rate is also 36 percent below both attorneys' reported hourly rate of $550 (*see* Blackburn Decl., ECF No. 58, ¶ 6; Stinvil Decl., ECF No. 59, ¶ 7), and approximately 16 percent below the lodestar hourly rate of $417.50, if based on 113.3 hours as discussed *supra*, note 7.

B. <u>Reasonable Number of Hours</u>

In determining a reasonable number of hours, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts "must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862 (RJD) (RML), 2021 WL 1413246, at *11 (E.D.N.Y.

Mar. 10, 2021) (citation omitted) (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012)).

Plaintiffs' counsel request compensation for 115.2 hours of work. (*See* Blackburn Records, ECF No. 58-1; Stinvil Records, ECF No. 59-1.) However, as noted above, the Court's review of the billing records indicates that the total number of hours originally listed in the billing records submitted to the Court equals 113.3. (*See* Blackburn Records, ECF No. 58-1.) But a close independent review of the billing records submitted by attorney Stinvil, which provide specificity as to which counsel performed which work (and when they both worked jointly), suggests that, collectively, Plaintiffs' attorneys may have worked as many as 135.1 hours.[8] Although the records here could be clearer, the Court has leeway to account for the hours submitted by Plaintiffs' counsel. As the *Fisher* court explained, courts "need not, and indeed should not, become green-eyeshade accountants" when evaluating fee requests, but courts are permitted to "properly calculate" items in the record. *Fisher*, 948 F.3d at 601 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

---

[8] The Court calculated this figure by adding the total number of hours listed in the billing records and crediting to both counsel the hours that both attorneys worked. (*See* Stinvil Records, ECF No. 59-1.) For example, Mr. Blackburn and Ms. Stinvil were both present for the Fairness Hearing, which lasted twenty minutes on the record. (*See* June 14, 2021 ECF Minute Entry.) The Stinvil Records indicate billable time of 0.5 hours for both Mr. Blackburn and Ms. Stinvil for this proceeding. (*See* Stinvil Records, ECF No. 59-1.) Assuming there was ten minutes of preparation or wait time (and noting that parties are directed to call in for proceedings five minutes before they are scheduled to begin), and notwithstanding the wrong date listed in the billing records, the Court finds that both attorneys should be credited for such work. Additionally, although the billing records do not specifically distinguish between the time spent on the FLSA and NYLL wage and hour work and the other legal claims arising out of this action, the Court credits counsel's representations that the hours submitted represent time spent litigating the wage and hour claims (*see* Blackburn Decl., ECF No. 58 ¶¶ 2–3, 10), and that the agreed-upon fee in the settlement agreement was reached through negotiations with opposing counsel (*id.* ¶ 10).

The next question is whether 113 to 135 hours represents a reasonable amount of time spent in this litigation. *Grant*, 973 F.2d at 99. While this amount could be considered excessive in a typical FLSA case, *see, e.g.*, *Hernandez*, 2021 WL 1413246, at *11, the Court finds this number of hours reasonable here because of the unusual level of litigation associated with the FLSA claims in this case. *See Luk*, 2021 WL 829417, at *7 (finding 165.4 hours to be reasonable in similarly protracted FLSA litigation), *report and recommendation adopted sub nom. Ying Ying Dai*, 2021 WL 826014. Although the FLSA and NYLL claims in this action do not appear to have involved difficult or novel legal questions, the settlement agreement comes after more than two years of extensive litigation. During that time, the parties have engaged in substantial discovery—including twelve depositions and documentary discovery—as well as multiple rounds of pleadings and settlement negotiations. (*See* Pls.' Letter, ECF No. 57, at 2; Blackburn Records, ECF No. 58-1; Stinvil Records, ECF No. 59-1.) And, notwithstanding the imperfect billing records, given the lengthy and multi-faceted nature of the instant proceedings, "[n]one of the legal work appears duplicative, unnecessary, or administrative in nature." *Perez-Ramos*, 2020 WL 415818, at *4.

Accordingly, the Court recommends finding that, in light of the relatively lengthy history of this case, as many as 135.1 hours is a reasonable amount of hours.

    C. <u>Overall Reasonableness of Fee Request</u>

The Supreme Court has noted that in fee shifting cases, "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838; *see also Fisher*, 948 F.3d at 604 (finding that "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." (emphasis and alteration in original) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir.

15

2011))). In light of the facts and circumstances of this case, the Court recommends finding that the $47,300.20 requested for attorneys' fees is, on balance, reasonable.

Based on the above analysis estimating a reasonable hourly rate of $350 and up to 135.1 as a reasonable number of hours, the requested attorneys' fees using the lodestar method of calculation would be $47,285, or just $15.20 less than the requested amount of $47,300.20. Taken as a proportion of the total settlement fund, $47,300.20 constitutes approximately a 41 percent share, which although greater than the presumptively reasonable 33 percent share, is not unreasonable in this case. *See Fisher*, 948 F.3d at 603.

The requested fee is also more than $16,000 below the $63,360 amount that attorneys Blackburn and Stinvil calculate to be their actual costs and fees in this case. In addition, Mr. Blackburn and Ms. Stinvil's requested fee amount is included as part of a settlement agreement negotiated at arm's length. (Settl. Agr., ECF No. 57-1, ¶¶ 2.1(c)(i)–(ii); Blackburn Decl. ¶ 10.) Defendant, who litigated against Plaintiffs for over two years and is in a good position to ascertain the scope of the legal work undertaken in this case to date, agreed to pay the requested amount of attorneys' fees after lengthy negotiations. Indeed, Defendant's counsel expressly confirmed during the Fairness Hearing that the agreed-upon fee was reasonable. (*See* Transcript, ECF No. 60, 11:19–24 ("Unlike a lot of other wage-and-hour cases, there was a lot of discovery that was conducted here, a big exchange, thousands of pages of time records, and there were contemporaneous time records which were analyzed[,] that exchanged back and forth.").)

For all of these reasons, the record illustrates that "the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Wolinsky*, 900 F. Supp. 2d at 336. Rather, it appears

that Plaintiffs' attorneys' diligence on behalf of their clients resulted in the proposed settlement agreement that will provide Plaintiffs with a reasonable and fair recovery on their FLSA claims.

Accordingly, notwithstanding the Court's concerns regarding the clarity and level of detail reflected in Plaintiffs' attorneys' billing records, the Court respectfully recommends approving the attorneys' fees as part of the proposed settlement, given that the agreement is fair and reasonable overall. *See Fisher*, 948 F.3d at 606 ("'[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'" (internal quotation marks and citation omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992))).

## CONCLUSION

In light of the foregoing, the Court respectfully recommends that Plaintiffs' motion for settlement approval be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:   Brooklyn, New York
              July 14, 2021

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

17